

ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2011 JUL -5  AM 9:22

CLERK OF COURT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

**FIRST NATIONAL BANK, et al.,**
                          **Objector/Appellants,**

**v.**                                                  **Civil Action No. 4:11-cv-00311-A**


**POLK MECHANICAL CO, LLC, et al.,**
                          **Respondents/Appellees.**


Appeal from the United States Bankruptcy Court
for the Northern District of Texas
Fort Worth Division

Bankruptcy Case No. 08-43775-DML-7


**BRIEF OF APPELLEE INNOVATIVE PLUMBING SERVICES, INC.**

Gregory A. Whittmore
State Bar No. 21407100
5910 N. Central Expressway
Suite 1010
Dallas, Texas 75206
Telephone: 214-891-6277
Facsimile:  214-891-6275
kearsage@msn.com
ATTORNEY FOR APPELLEE
INNOVATIVE PLUMBING
SERVICES, INC.



Certificate of Interested Persons

First National Bank
Counsel:        Eric Yollick
                Yollick Law Firm, P.C.

MetroBank, N.A.
Counsel:        Charles Perry
                Andrews Kurth, L.L.P.

AARK Companies, L.L.C.
JMC Mechanical, Inc.
Jesus Vera d/b/a Elite Construction
Metropolitan Professional Services, Inc. d/b/a Metro Electric
Counsel:        Randyl S. Meigs
                McDonald Sanders, P.C.

Crescent Electric Supply Company
Hajoca Corporation d/b/a Easter & Sons Supply,
for itself and as partial assignee of Innovative Plumbing Services, Inc.
Counsel:        Misti Beanland
                Mathews, Stein, Shiels, Pearce, Knott, Eden & Davis, L.L.P.

Innovative Plumbing Services, Inc.
Counsel:        Gregory A. Whittmore

Polk Mechanical Co, L.L.C.
Counsel:        Jason R. Kennedy
                Thomas, Feldman & Wilshusen

York International Corporation
Counsel:        Peter C. Lewis
                White & Wiggins, L.L.P.

i

TABLE OF CONTENTS

Certificate of Interested Persons                                              i

Table of Contents                                                              ii

Table of Authorities                                                           iii

Statement of Appellate Jurisdiction                                            1

Reply to Issues Presented and Standard of Review                               1

Statement of the Case                                                          3

Statement of Facts                                                             3

Argument and Authorities                                                       8

    **1.    The bankruptcy court correctly found that Innovative was not bound by a signed stipulation that the first visible work or delivery of first visible materials occurred on or after October 9, 2006, but before February 22, 2009. Attorney Beanland's signature appears for Innovative because it assigned part of its claim to Hajoca, one of Ms. Beanland's clients, as payment for materials that Easter supplied to Innovative. Ms. Beanland could not bind Innovative because it was not her client. The bankruptcy court's finding was not clearly erroneous and it correctly overruled the Lenders' objection that Innovative's Mechanics and Materialman's Lien was subordinate to their lien. (Reply to Appellants' Issue No. 1).**                                              8

    **2.    The bankruptcy court correctly found that Innovative commenced work on the site prior to September 1, 2006, and that Innovative's activity at the site before September 1, 2006 was visible construction work. The bankruptcy court's finding is not clearly erroneous and it correctly overruled Lenders' objection that Innovative's Mechanics and Materialman's Lien was subordinate to their lien. (Reply to Appellants' Issue No. 2).**                                              11

Conclusion                                                                     15

Certificate of Service                                                         15

Table of Authorities

Cases

*Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir.), *cert. denied*, 2
449 U.S. 899 (1980)

*Anderson v. City of Bessemer City*, 470 U.S. 564 (1985)                        2

*Arbuckle Broadcasters, Inc. v. Rockwell Int'l Corp.*, 513 F. Supp. 412
(N.D. Tex. 1981)                                                                10

*Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496 (5th Cir.),           2
*cert. denied*, 444 U.S. 932 (1979)

*Blackman v. Praetorians*, 256 S.W.2d 990 (Tex. Civ. App.—Dallas 1952,
writ ref'd n.r.e.)                                                              9

*Diversified Mortgage Investors v. Blaylock*, 576 S.W.2d 794 (Tex. 1978)        12

*Fritiofson v. Alexander*, 772 F.2d 1225 (5th Cir. 1985)                        2

*In re Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir. 1986)            2

*In re Jamail*, 471 F.Supp. 441 (S.D. Tex. 1979), *aff'd sub nom.*,             12
*Matter of Jamail*, 609 F.2d 1387 (5th Cir. 1980)

*In re Needham*, 354 F.3d 340 (5th Cir. 2003)                                   10

*In re Waller Creek, Ltd.*, 867 F.2d 228, 234 (5th Cir. 1989).                  12

*Jackson v. State of La.*, 980 F.2d 1009 (5th Cir. 1993)                        10

*Matter of Jamail*, 609 F.2d 1387 (5th Cir. 1980)                               12

*McNamara v. Am. Motors Corp.*, 247 F.2d 445 (5th Cir. 1957)                    13

*Modla v. United States*, 151 F. Supp. 198 (D.N.J. 1957)                        13, 14

*Perkins Constr. Co. v. Ten-Fifteen Corp.*, 545 S.W.2d 494
(Tex. Civ. App.—San Antonio 1976, no writ)                                      12

*Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249 (5th Cir. 2010)       10

iii

*Reliable Life Ins. Co. v. Brown & Root, Inc.*, 621 S.W.2d 621
(Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.)                                    12, 13

*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985)          2

*Wilson v. Huffman (In re Missionary Baptist Found of Am.)*, 712 F.2d 206
(5th Cir. 1983)                                                                      2

Statutes

28 U.S.C. § 158(a).                                                                  1

Rules

Fed. R. Bankr. P. 8013                                                            2, 14

Other authorities

7 Am. Jur. 2d *Attorneys at Law* § 147 (2010)                                       10

iv

## STATEMENT OF JURISDICTION

This is an appeal from a final order entered by the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.  This Court has appellate jurisdiction under 28 U.S.C. § 158(a).

## REPLY TO ISSUES PRESENTED AND STANDARD OF REVIEW

A.     REPLY TO ISSUES PRESENTED

1.     The bankruptcy court correctly found that Innovative Plumbing Services, Inc. ("Innovative") was not bound by a signed stipulation that the first visible work or delivery of first visible materials occurred on or after October 9, 2006, but before February 22, 2009.  Attorney Misti Beanland's signature appears on behalf of Innovative because it assigned part of its claim to Hajoca Corporation d/b/a Easter & Sons Supply ("Easter"), one of Ms. Beanland's clients, as payment for materials that Easter supplied to Innovative.  Ms. Beanland could not bind Innovative because it was not her client.  The bankruptcy court's finding is not clearly erroneous and it correctly overruled Appellants' objection that Innovative's Mechanics and Materialman's Lien was subordinate to their lien.  (Reply to Appellants' Issue No. 1).

2.     The bankruptcy court correctly found that Innovative Plumbing Services, Inc. commenced work on the site prior to September 1, 2006, and that Innovative's activity at the site before September 1, 2006 was visible construction work. The bankruptcy court's finding is not clearly erroneous and it correctly overruled Appellants' objection that Innovative's Mechanics and Materialman's Lien was subordinate to their lien.  (Reply to Appellants' Issue No. 2).

B.     STANDARD OF REVIEW

The Appellants' complaints on appeal stem from the bankruptcy court's factual findings

BRIEF OF APPELLEE INNOVATIVE
PLUMBING SERVICES, INC.                                    1

that (1) Attorney Misti Beanland did not represent Innovative Plumbing Services, Inc.; and (2)

Innovative Plumbing Services, Inc. began construction work at the hospital site and supplied

materials prior to September 1, 2006. The bankruptcy court's "[f]indings of fact, whether based

on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard

shall be given to the opportunity of the bankruptcy court to judge the credibility of the

witnesses." Fed. R. Bankr. P. 8013. *See also In re Consolidated Bancshares, Inc.*, 785 F.2d

1249, 1252 (5th Cir. 1986); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1308

(5th Cir. 1985). The United States Supreme Court defines clearly erroneous as follows:

> [a] finding is "clearly erroneous" when although there is evidence to support it, the
> reviewing court on the entire evidence is left with the definite and firm conviction
> that a mistake has been committed. *United States v. United States Gypsum Co.*,
> 333 U.S. 364, 395 (1948).

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). "In other words, we reverse when

the result in a particular case does not reflect the truth and right of the case." *Amstar Corp. v.*

*Domino's Pizza, Inc.*, 615 F.2d 252, 258 (5th Cir.), *cert. denied*, 449 U.S. 899 (1980) (*quoting*

*Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 501 (5th Cir.), *cert. denied*, 444 U.S.

932 (1979)). When a finding of fact is premised on an improper legal standard, or a proper one

improperly applied, that finding loses the insulation of the clearly erroneous rule. *Wilson v.*

*Huffman (In re Missionary Baptist Found of Am.)*, 712 F.2d 206, 209 (5th Cir. 1983).[1] The

bankruptcy court's pronouncements on questions of law and mixed questions of law and fact are

reviewed *de novo. Fritiofson v. Alexander*, 772 F.2d 1225, 1229 (5th Cir. 1985).

---

[1] Appellants do not argue anywhere in their brief that the bankruptcy court premised a fact on an improper legal standard or a proper one improperly implied. Instead, Appellants argue the credibility of the evidence.

## STATEMENT OF THE CASE

This is an appeal from a bankruptcy court order overruling two lenders' objections to contractors and suppliers mechanics and materialmens' liens. Innovative Plumbing Services, Inc. provided labor and materials to the renovation of a hospital in Grand Prairie before August 31, 2006, the date the lenders filed a Deed of Trust. Innovative Plumbing Services, Inc. filed a mechanics and materialmens lien affidavit November 13, 2008. Innovative Plumbing Services, Inc. subsequently assigned $124,224.67 of its mechanics lien claim to Hajoca Corporation, doing business as Easter & Sons Supply. Hajoca Corporation, for itself and as a partial assignee of Innovative Plumbing Services, Inc. later signed a stipulation that no labor or materials were supplied to the construction site before October 9, 2006. The lenders argued that Innovative Plumbing Services, Inc. was bound by the signed stipulation. The bankruptcy court found that Innovative Plumbing Services, Inc. was not bound by the signed stipulation because the attorney who signed it did not represent Innovative Plumbing Services, Inc. The bankruptcy court also found that Innovative Plumbing Services, Inc. began work at the hospital in late July or early August 2006, a date prior to the lenders' liens. The bankruptcy court found the testimony of Innovative Plumbing Services, Inc.'s president to be credible and that the lenders did not present any evidence contradicting it. The priority of Innovative Plumbing Services, Inc. lien was reserved for a subsequent hearing. This appeal followed.

## STATEMENT OF FACTS

*The Lenders*

On August 31, 2006, Renaissance Hospital-Grand Prairie, Inc. ("RGP") acquired a vacant hospital at 2709 Hospital Boulevard, Grand Prairie, Texas (the "Hospital"), from DFW Grand

Prairie Medical Center, Ltd., pursuant to a special warranty deed with a vendor's lien. Ex. A. The special warranty deed and vendor's lien were recorded in Tarrant County, Texas, on September 1, 2006. The vendor's lien secured the payment of a note to MetroBank, N.A. and First National Bank (the "Lenders") in the amount of $7,000,000. The loan was also secured by a Deed of Trust, dated August 31, 2006, recorded in the Tarrant County, Texas, deed records on September 1, 2006. Ex. B. Besides securing the initial $7,000,000 loan, the Deed of Trust also contained a future advances clause. Ex. B.

*Innovative Plumbing Services, Inc. and Its Work at the Hospital*

RGP intended to renovate the Hospital. Glenn Smith, president of Innovative Plumbing Services, Inc. ("Innovative"), testified that he initially visited the Hospital in June of 2006 to determine the scope of work that needed to be done. Supp. Tr. 5, V. 2. The Hospital had been vacant for nine years. Supp. Tr. 36, V. 2. Innovative began work at the Hospital at the end of July or beginning of August 2006. Supp. Tr. 6, V. 2. Initially, Walter Boggan, the physical plant manager, charged Innovative with restoring water service to the Hospital and with repairing a bathroom. Supp. Tr. 6-7, 48-52, V. 2. In furtherance of these tasks, Innovative supplied copper, cast iron and miscellaneous fittings. Supp. Tr. 6-7, 48-52, V. 2. Innovative billed for the work it completed in July and August of 2006 on September 14, 2006. Ex. 63. Innovative regularly gave its bills to Boggan who would then pay them. It was Innovative's practice to bill for work after it was completed and that Boggan frequently did not receive Innovative's bills for two or three weeks after work had been completed. Supp. Tr. 31-33, V. 2.

Innovative filed an affidavit claiming a Mechanics & Materialmen's Lien ("M&M Lien") in the County Clerk's Office of Tarrant County on February 12, 2008. Ex. 59. Innovative

subsequently assigned a portion of its lien to Hajoca Corporation, doing business as Easter & Sons Supply ("Easter"), because Easter supplied Innovative with materials that were used in renovating the Hospital. Ex. 61; Supp. Tr. 21-22, 26, V. 2. Easter also filed an M&M Lien in the County Clerk's Office of Tarrant County on February 1, 2008. Ex. 60.

*The Bankruptcy Case*

RGP filed Chapter 11 August 21, 2008. R. 219. The case converted to Chapter 7 September 23, 2009. R. 385. RGP and the Lenders filed a Joint Motion Under Bankruptcy Rule 9019 to Approve Compromise and Settlement (the "9019 Motion") on January 2, 2009, seeking court approval for MetroBank to foreclose its Deed of Trust lien on the hospital. R. 423-43.

After objections, the bankruptcy court subsequently entered a compromise order approving the settlement described in the 9019 Motion. R. 1234-44. The order the court lifted the stay of 11 U.S.C. § 362(a) with respect to the Hospital and certain personal property, allowed the Lenders to foreclose their liens on the Hospital and personal property, and required the Lenders to credit bid at least $27,000,000 for the Hospital at a foreclosure sale. R. 1236-37. The order also provided that any party could assert a superior interest in the Hospital and the personal property by submitting documentation to RGP and the Lenders evidencing such superior interest by February 5, 2009, or such later date as the parties agreed to, but not later than February 18, 2009. R. 1238-39. The order further provided that if the Lenders disagreed with a party claiming a superior interest in the Hospital or personal property, the Lenders could file a notice describing the disputed priority issues by February 18, 2009. R. 1240.

On February 18, 2009, the Lenders filed their Notice of Objections of MetroBank, N.A. and First National Bank of Edinburg, Texas to Lease and M&M Lien Claims and objected to the

priority of the liens of All Pro Glass & Mirror, Polk Mechanical Company, LLC, JMC

Mechanical, Inc., AARK Companies, LLC, Jesus Vera d/b/a Elite Construction, Metropolitan

Professional Electrical Services, Inc., d/b/a Metro Electric, Crescent Electric Supply Company,

York International Corporation, Easter, and Innovative. R. 662-89. After hearings, entry of

scheduling orders, and submission of the Lenders' motion for summary judgment, the bankruptcy

court granted the summary judgment motion in part. R. 89-92. The bankruptcy court narrowed

the issues for trial to (1) whether any of the lien claimants had supplied labor or materials before

September 1, 2006, the date the Deed of Trust was recorded; or (2) whether there was a general

contractor arrangement to support relation back of the claimants' M&M Liens under *McConnell*

*v. Mortgage Inv. Co.*, 305 S.W.2d 280 (Tex. 1957), and subsequent cases. R. 90-91.

*Bankruptcy Court Trial and Decision*

The bankruptcy court tried the issues April 6, 7, 19, 20, and May 6, 2010. R. 186; Tr. V.

1-3; Supp. Tr. V. 1-2. During the trial, Glenn Smith, Innovative's president, testified that he

initially visited the Hospital in June 2006 to determine the scope of work that needed to be done.

Supp. Tr. 5, V. 2. At the end of July or beginning of August 2006, Innovative began work at the

Hospital. Supp. Tr. 6, V. 2. Initially, Walter Boggan, RGP's physical plant manager, charged

IPS with restoring water service to the Hospital and with repairing a bathroom. Supp. Tr. 6-7,

48-52, V. 2. In furtherance of these tasks, Innovative supplied copper, cast iron and

miscellaneous fittings. Supp. Tr. 6-7, 48-52, V. 2. Innovative also repaired leaks. Supp. Tr. 49,

V. 2. Innovative billed for the work it completed in July and August of 2006 on September 14,

2006. Ex. 63. Innovative regularly gave its bills to Boggan who would then pay them. Smith

testified that it was Innovative's practice to bill for work after it was completed and that Boggan

frequently did not receive Innovative's bills for two or three weeks after work had been completed. Supp. Tr. 31-33, V. 2.

The bankruptcy court issued a memorandum opinion August 25, 2010. R. 182-204. The bankruptcy court found:

(1)      There was no general contractor for the Hospital construction project;

(2)      As a result, the Deed of Trust was prior to all of the contractors' M&M Liens except Innovative and Metro Electric;

(3)      Innovative and Metro Electric did work and supplied materials prior to September 1, 2006;[2]

(4)      The Lenders presented no evidence contradicting Smith's testimony;

(5)      Smith appeared to the court to be a credible witness;

(6)      Smith's testimony regarding when IPS commenced work and its customs regarding billing were credible.

(7)      Innovative was not bound by the Mechanics and Materialman's Stipulation filed in connection with the motion for summary judgment that its first visible work was on or after October 9, 2009, but before February 22, 2009, because attorney Misti Beanland did not represent Innovative.

(8)      Attorney Misti Beanland's signature appears on the stipulation on behalf of

---

[2]    In footnote 27 of its August 25, 2010, Memorandum Opinion, the bankruptcy court found:

The court recognizes that merely inspecting pipes would not be sufficient to support an M&M Lien's inception date. In the case at bar, IPS did more than merely inspect pipes (other than repair the bathroom); it also repaired some minor leaks — an endeavor which clearly required actual labor.

R. 202 n. 27.

Innovative because it assigned part of it claim to Easter, one of Ms. Beanland's clients, as payment for materials that Easter supplied to Innovative.

(9)     Innovative and Metro Electric's M&M Liens related back and were prior to the Deed of Trust.

R. 188-90, 190, 190-92, 194 n. 23, 201, 202-204.  On October 12, 2010, judgment was entered overruling the Lenders' objections to Innovative and Metro Electric's M&M Liens.  R. 205-06.
*Post Trial Motions and Amended Judgment.*

Metro Electric requested the bankruptcy court to amend or alter the judgment to render judgment against the Lenders.  R. 1207-18.  The Lenders filed motions for new trial on the sole ground that Innovative was bound by the stipulation signed by Ms. Beanland.  R. 1219-22, 1222-24.  On December 29, 2010, the bankruptcy court issued a Memorandum Opinion granting Metro Electric's motion to amend the judgment and denying the Lenders' motions for new trial.  R. 207-12.  The bankruptcy court again rejected the Lenders' argument that Innovative was bound by the written stipulation signed by Ms. Beanland.  R. 209-10.  An Amended Judgment was entered January 31, 2011.  R. 213-15.  This appeal followed.

## ARGUMENT & AUTHORITIES

1.      **The bankruptcy court correctly found that Innovative was not bound by a signed stipulation that the first visible work or delivery of first visible materials occurred on or after October 9, 2006, but before February 22, 2009.  Attorney Misti Beanland's signature appears on behalf of Innovative because it assigned part of its claim to Easter, one of Ms. Beanland's clients, as payment for materials that Easter supplied to Innovative.  Ms. Beanland could not bind Innovative because it was not her client.  The bankruptcy court's finding was not clearly erroneous and it correctly overruled the Lenders' objection that Innovative's Mechanics and Materialman's Lien was subordinate to their lien.**
        **(Reply to Appellants' Issue No. 1).**

The Lenders' arguments exaggerate the extent of the assignment to Easter and ignore the law that an attorney cannot bind a party he does not represent. A reading of the entire assignment shows it is a partial assignment to the extent of the debt Innovative owed Easter, $124,224.67. None of the cases cited by the Lenders deals with a partial assignment of a debt. "An assignment to a creditor is limited, whether so recited therein or not, to the amount of the debt." *Blackman v. Praetorians*, 256 S.W.2d 990, 995 (Tex. Civ. App.—Dallas 1952, writ ref'd n.r.e.) In *Blackman*, there was no qualification in the assignment and nothing to show the assignment of an insurance policy to be in fact security for a debt or a debtor-creditor relationship. *Id.* at 995. The opposite is true here. Paragraph 3 on page 2 of the Assignment states that "[t]his assignment and security interest is for security purposes only, and is only effective as to the amount of indebtedness due Hajoca by Innovative relating to the materials furnished to the construction project." Ex. 61. The two opening paragraphs of the assignment identify the $124,224.67 amount owed and the Hospital as the construction project. Ex. 61. Nothing in the assignment gives Easter any right to bind Innovative concerning the amount more than $124,224.67 that RGP owed Innovative.

Likewise, the Lenders' argument that Ms. Beanland's signature on the summary judgment stipulation binds Innovative is specious. The Lenders' statement at page 17 of their brief that the bankruptcy court's memorandum opinion "*sua sponte*, relieved IPS of the effect of the stipulation on the grounds that IPS allegedly did not sign the stipulation and that IPS was not Beanland's client" misstates the facts. The issues of whether (1) the stipulation was binding on Innovative; and (2) Ms. Beanland represented Innovative, arose during Glenn Smith's direct testimony when the Lenders objected to testimony about "anything prior to the stipulation date" and again later during his testimony. Supp. Tr. 5-7, 10-17, 25-26, V. 2.

Twice, the bankruptcy court carefully considered stipulation and whether it was binding on Innovative. R. 194 n.23, 209-10.[3] Ms. Beanland candidly informed the bankruptcy court that she did not represent Innovative and that is was not a party. Supp. Tr. 5, V. 2. The bankruptcy court found Ms. Beanland's signature appears on the stipulation on behalf of Innovative because it assigned part of its claim to Easter, one of Ms. Beanland's clients, as payment for materials that Easter supplied to Innovative. R. 194 n. 23. "Because IPS was not Ms. Beanland's client, she could not bind IPS. *See* 7 Am. Jur. 2d *Attorneys at Law* § 147 (2010)." R. 194 n. 23.

None of the cases cited by the Lenders is on point or holds that a person can be bound by a stipulation signed by an attorney who does not represent that person.[4] The bankruptcy court's

---

[3]     Footnote 1 to the bankruptcy court's December 29, 2010, Memorandum Opinion states:

> The Lenders complain of the court's conclusion to this effect in FNB's Motion. However it is clear from the record that Hajoca's counsel, who signed the stipulation, did not represent IPS. *See* Hearing Transcript from 4/7/2010 (docket no. 1498), pg. 5 (Misti Beanland: "Your Honor, I was going to bring it up later, [IPS] is not a party to this case and we don't represent them.")

R. 210 n. 1.

[4]     In *Arbuckle Broadcasters, Inc. v. Rockwell Int'l Corp.*, 513 F. Supp. 412 (N.D. Tex. 1981), Judge Porter rejected an insurance company's argument that the law firm authorized to seek recovery of its subrogation interest were not authorized to pursue a DTPA claim. *Id.* at 419. Here, Ms. Beanland informed the bankruptcy court that she did not represent Innovative and that it was not a party (Supp. Tr. 5, V. 2).

In *Rathborne Land Co. v. Ascent Energy, Inc.*, 610 F.3d 249 (5th Cir. 2010), the Fifth Circuit declined to enforce a stipulation about the identity of a lessor on a mineral lease in a pretrial order. *Id.* at 262. After the close of the trial, the appellant sought to introduce additional evidence to show a mistake about the identity of the lessor. *Id.* The Fifth Circuit, while recognizing that a party is normally bound by his stipulation except where necessary to avoid manifest injustice or there is substantial evidence to contradict the stipulation, held there was an ongoing factual dispute about the identity of the lessor, did not enforce the stipulation, and remanded the identity issue to the trial court for determination. *Id.* at 262-63. Here, the assignment from Innovative to Hajoca assigned only $124,224.67 of Innovative's claim and did not give Hajoca any authority to bind Innovative concerning the amount more than $124,224.67 that RGP owed Innovative. Ex. 61.

In *In re Needham*, 354 F.3d 340 (5th Cir. 2003), and *Jackson v. State of La.*, 980 F.2d 1009 (5th Cir. 1993), the Fifth Circuit enforced stipulations by the parties entered into by their attorneys. *Needham*, 354 F.3d at 346; *Jackson*, 980 F.2d at 1014 n. 7. Here, Innovative was not represented by Ms. Beanland and was not a party.

finding that Innovative is not bound by the stipulation is supported by the record. It is not clearly erroneous. Lenders' Issue No. 1 should be overruled.

2.  **The bankruptcy court correctly found that Innovative commenced work on the site prior to September 1, 2006, and that Innovative's activity at the site before September 1, 2006 was visible construction work. The bankruptcy court's finding is not clearly erroneous and it correctly overruled Lenders' objection that Innovative's Mechanics and Materialman's Lien was subordinate to their lien.**
    **(Reply to Appellants' Issue No. 2).**

The Lenders' argument that the work performed by Innovative before September 1, 2006, was not visible construction work fails. During the trial, Glenn Smith, Innovative's president, testified that he initially visited the Hospital in June 2006 to determine the scope of work that needed to be done. Supp. Tr. 5, V. 2. The Hospital had been vacant for nine years. Supp. Tr. 36, V. 2. At the end of July or beginning of August 2006, Innovative began work at the Hospital. Supp. Tr. 6, V. 2. Initially, Walter Boggan, RGP's physical plant manager, charged IPS with restoring water service to the Hospital and with repairing a bathroom. Supp. Tr. 6-7, 48-52, V. 2. In furtherance of these tasks, Innovative supplied copper, cast iron and miscellaneous fittings. Supp. Tr. 6-7, 48-52, V. 2. The materials supplied by Innovative were specific to hospital needs. Supp. Tr. 34-35, V. 2. Innovative also repaired leaks. Supp. Tr. 49, V. 2. The materials supplied could have remained as permanent because a building permit is not necessarily required to make repairs. Supp. Tr. 50, V. 2. Innovative billed for the work it completed in July and August of 2006 on September 14, 2006. Ex. 63. Innovative regularly gave its bills to Boggan who would then pay them. Smith testified that it was Innovative's practice to bill for work after it was completed and that Boggan frequently did not receive Innovative's bills for two or three weeks after work had been completed. Supp. Tr. 31-33, V. 2. The bankruptcy court found that Glenn

Smith's testimony about what work Innovative did, when Innovative did the work, and Innovative's billing practices was credible. R. 201. The bankruptcy court also found that the Lenders "presented no evidence contradicting Smith's testimony. R. 201. The bankruptcy court found that Innovative's work was not preliminary or preparatory work. R. 202 n. 27.

Innovative's repair work and the materials it supplied do not fall within the preliminary and preparatory activities identified by the Lenders at pages 21 and 22 of their appeal brief. The cases cited by the Lenders involved new construction, not a renovation of an existing structure. *See Diversified Mortgage Investors v. Blaylock*, 576 S.W.2d 794, 797, 798-99 (Tex. 1978) (construction of two Dollar Inn motels in Fort Worth and Irving);[5] *Perkins Constr. Co. v. Ten-Fifteen Corp.*, 545 S.W.2d 494, 497 (Tex. Civ. App.—San Antonio 1976, no writ) (construction of a "tilt-slab" office building);[6] *In re Jamail*, 471 F.Supp. 441, 443 (S.D. Tex. 1979), *aff'd sub nom.*, *Matter of Jamail*, 609 F.2d 1387 (5th Cir. 1980) (construction of three apartment complexes).[7] Demolition of existing structures to make way for new structure, excavation, and pier drilling are visible work under *Diversified*. *In re Waller Creek, Ltd.*, 867 F.2d 228, 234 (5th Cir. 1989). Likewise, grading and clearing a site is considered commencement. *Reliable Life Ins. Co. v. Brown & Root, Inc.*, 621 S.W.2d 621, 629 (Tex. Civ. App.—Waco 1980, writ ref'd

---

[5]    In *Diversified*, two sites were in question. On the Fort Worth site, the Texas Supreme Court held that subsurface investigation, topographical survey work, spreading fill dirt, staking, erection of batter boards, excavation for a retaining wall, and erection of a sign were preliminary or preparatory work. 576 S.W.2d at 803. On the Irving site, however, the court held excavation, clearing, grubbing work, including general site clearance, removal of large trees, digging up and removal of swimming pool, and delivery of concrete pipe were sufficient to create a lien. *Id.*

[6]    In *Perkins*, the work was site clearing and setting up batter boards. 545 S.W.2d at 497.

[7]    In *Jamail*, the district court does not describe what activities it found "were merely preliminary tasks not measuring up to the test enunciated for pinpointing the date of inception of a materialman's lien." 471 F.Supp. at 443. In the Fifth Circuit, the work performed was not the issue. Instead, the appeal dealt the identification of materials by a major supplier, but not the sole supplier, of materials for construction of three apartment complexes. 609 F.2d at 1388-89.

n.r.e.).  Innovative's activities are visible work.

Finally, at page 24 of their brief the Lenders, citing *McNamara v. Am. Motors Corp.*, 247

F.2d 445, 450 (5th Cir. 1957), and *Modla v. United States*, 151 F. Supp. 198, 201 (D.N.J. 1957)

attempt to undermine the bankruptcy court's finding that the testimony about Innovative's billing

practices was credible on the grounds that "testimony about what might have possibly happened

is insufficient to support a factual finding."[8]   The attempt is specious and fails for two reasons.

First, the cases cited by the Lenders are distinguishable and do not support their

argument.  In both cases, it was the plaintiff's explanation of how an accident occurred, not one

fact, that was based on a possibility.  *McNamara* was an appeal of a directed verdict in an auto

design case.  *Id.* at 446.  Whether testimony about a possibility could support a factual finding

was not the issue in *McNamara*.  Instead, it was the plaintiff's theory that a car design was

defective because the outside jacket tubing of the steering column was loose after an incident

submerging it in a river.  *Id.* at 449-50.  The plaintiff argued a set of supposed facts that fit her

conclusion of a design defect, but no direct testimony or circumstantial evidence supported them.

*Id.*  The Fifth Circuit held:

> [T]he jury would have been put in the fantastic position of having to speculate or
> guess whether the condition, testified to as existing after the submersion, had
> manifested itself before the car went into the river and whether, if it had the
> deceased had been aware of it.  It is settled law that verdicts may not rest upon
> such mere guess or speculation.

247 F.2d at 450.  *In Modula*, the plaintiff's testimony about how an accident occurred was not

credible.  He alleged that the Department of Army negligently maintained a pier area.  The

plaintiff claimed he was injured when the front wheels of the fork-lift he was operating hit rail

---

[8]  Brief of Appellants at 24.

road tracks and bounced, the rear wheels hit holes at the tracks, tipped down, and allowed the fork-lift blades to dig into a rail of a railroad track. 151 F. Supp. at 200. Photographs showed the tracks were level with the grade of a paved roadbed. *Id.* at 200-01. The trial court found that the "[physical facts make it unbelievable and impossible that the occurrence was caused as the plaintiff alleged on this level area." *Id.* at 201. Instead, the trial court found that the plaintiff drove too fast and took a different path. The plaintiff's description of the accident was not credible.

> It is settled law in New Jersey that 'testimony to be believed must not only proceed from the mouth of a credible witness but must be credible in itself. It must be such as the common experience and observation of mankind can approve as probable in the circumstances. * * *.' *Spanuolo v. Bonnet*, 1954, 16 N.J. 546, 554-55, 109 A.2d 623, 628, quoting *In re Perrone's Estate*, 1950, 5 N.J. 514, 521, 76 A.2d 518. Evidence which merely makes it possible for the fact in issue to be alleged, or which, raises a mere conjecture, surmise, or suspicion, is insufficient to sustain a judgment for the plaintiff.

151 F. Supp. at 201.

Second, Smith testified that invoices would be written weekly for work performed the week prior, but Boggan might not receive the invoice for a week or two. Supp. Tr. 32-33, V. 2. The bankruptcy court observed Smith firsthand and found his testimony credible. The Lenders did not present any credible testimony to rebut Smith's testimony.[9] "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013. The bankruptcy court's finding is not clearly erroneous. It

---

[9]     The bankruptcy court specifically found that "[t]he Lenders presented no evidence contradicting Smith's testimony and Smith appeared to the court to be a credible witness; the court, therefore, finds Smith's testimony regarding when IPS commenced work and its customs regarding billing to be credible." R. 201.

correctly overruled the Lenders' objection.

## CONCLUSION

The Lenders' arguments fail.  The bankruptcy court's findings of fact are not clearly

erroneous.  The bankruptcy court correctly overruled their objections to Innovative's M&M Lien.

The Court should affirm the judgment of the bankruptcy court.

WHEREFORE, PREMISES CONSIDERED, Appellee, Innovative Plumbing Services,

Inc., respectfully prays the Court to affirm the judgment of the bankruptcy court.

Respectfully submitted,

By:

Gregory A. Whittmore
State Bar No. 21407100
5910 N. Central Expressway, Suite 1010
Dallas, Texas   75206
Telephone: 214.891.6277
Facsimile: 214.891.6275
E-mail: kearsage@msn.com
ATTORNEY FOR APPELLEE
INNOVATIVE PLUMBING SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July 2011, a true and correct copy of the foregoing
document was served via United States mail, first-class, postage prepaid, addressed to the
following persons.

Eric L. Yollick
Yollick Law Firm, PC
P.O. Box 7571
The Woodlands, Texas 77387-7571

Charles L. Perry
Andrews Kurth
1717 Main Street, Suite 3700
Dallas, Texas 75201

Jason R. Kennedy
Thomas, Feldman & Wilshusen
9400 N. Central Expressway, Suite 900
Dallas, Texas 75231-5027

Randyl S. Meigs
McDonald Sanders, PC
777 Main Street, Suite 1300
Fort Worth, Texas 76102

Misti L. Beanland
Matthews, Stein, Shiels, Pearce, Knott, Eden & Davis
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251

Peter C. Lewis
White & Wiggins, LLP
901 Main Street, Suite 6200
Dallas, Texas 75202

Gregory A. Whittmore